# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| LABORERS' PENSION FUND, et al., | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| v. | ) | **Case No. 07 C 1829** |
| | ) | |
| M & M MAINTENANCE, INC., an | ) | **Judge Norgle** |
| involuntarily dissolved Illinois corporation, | ) | |
| and MARC FRICKE, individually, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MOTION FOR JUDGMENT IN SUM CERTAIN

Plaintiffs, Laborers' Pension Fund and Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity (collectively "Funds") and James S. Jorgensen (hereinafter "Jorgensen"), Administrator of the Funds, by their attorney, Jerrod Olszewski, respectfully move for Judgment in Sum Certain against Defendant M & M Maintenance, Inc., (hereinafter the "Company"), and Marc Fricke (hereinafter "Fricke"). In support of this Motion, Plaintiffs state as follows:

1.     Plaintiffs filed their Complaint on April 3, 2007 seeking to compel the Company and Fricke to submit to an audit for the period of January 1, 2004 forward and pay any delinquencies found owing, including liquidated damages, interest, and audit costs, and to compel payment of liquidated damages on late paid benefits reports for the months of July and September, 2004.

2.      On May 18, 2007, this Court found the Company and Fricke in default and directed them to submit their books and records to an audit. A true and accurate copy of this Court's May 18, 2007 Order is attached hereto as Exhibit A.

3.      Defendants submitted their books and records to an audit for the time period of January 1, 2004 through May 31, 2007.

4.      As set forth in the Affidavit of Michael Christopher, filed contemporaneously herewith and attached hereto as Exhibit B, pursuant to the Agreement, and the Funds' respective Agreements and Declarations of Trust, the Funds are entitled to the delinquent contributions, liquidated damages and interest on the late amounts, and audit costs.  See Exhibit B, ¶ ¶ 1 through 6.

5.      Pursuant to Section 502(g)(2) of the Employee Retirement Income Security Act ("ERISA"), as amended, 29 U.S.C. § 1132(g)(2), Section 301 of the Labor Management Relations Act ("LMRA"), as amended, 29 U.S.C. §185, the Agreement, and the Funds' respective Agreements and Declarations of Trust, the Funds are entitled to judgment in the amount of $4,409.59 against Defendants M&M Maintenance, Inc. and Marc Fricke as follows:

      a.      $2,469.99 in delinquencies, liquidated damages, interest, and audit costs for the audit period of January 1, 2004 through May 31, 2007, and liquidated damages on late paid July and September, 2004 benefits reports.  See Exhibit B, ¶ ¶ 5 and 6.

      b.      As set forth in the Declaration of Jerrod Olszewski filed contemporaneously herewith and attached hereto as Exhibit C, $1,939.60 in attorneys' fees and costs expended in this matter.

WHEREFORE, Plaintiffs respectfully request that judgment be entered in Plaintiffs' favor and against Defendants M&M Maintenance, Inc. and Marc Fricke joint and severally in the amount of $4,409.59 as follows:

A.   For $2,469.99 in delinquencies, liquidated damages, interest, and audit costs for the audit period of January 1, 2004 through May 31, 2007, and liquidated damages on late paid July and September, 2004 benefits reports;

B.   For $1,939.60 representing attorneys' fees and costs; and

C.   Ordering Defendants to pay post judgment interest in all amounts due from the date of judgment until the judgment is satisfied.

August 15, 2007

Respectfully submitted,
Laborers' Pension Fund, et al.


By: /s/ Jerrod Olszewski


Jerrod Olszewski
Laborers' Pension and Welfare Funds
Sub Office, 53 W. Jackson Blvd., Suite 550
Chicago, IL  60604
(312) 692-1540

*per*

## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

LABORERS' PENSION FUND, et al.,      )
                                     )
                  Plaintiffs,        )
                                     )      Case No.  07 C 1829
        v.                           )
                                     )      Judge Norgle
M & M MAINTENANCE, INC., an          )
involuntarily dissolved Illinois corporation, )
and MARC FRICKE, individually,       )
                                     )
                  Defendants.        )

### ORDER OF DEFAULT

This matter having come to be heard on the Motion of Plaintiffs' Laborers'

Pension Fund, et. al., for Order of Default, due notice having been given, and the Court

being fully advised in the premises,

IT IS HEREBY ORDERED THAT:

1.      Defendants M & M Maintenance, Inc., and Marc Fricke, individually and

d/b/a M & M Maintenance, Inc., are in default.

2.      Defendants are directed to submit their books and records for an audit for

the period of January 1, 2004 forward.

FURTHER, the Court retains jurisdiction to enter judgment in sum certain upon

the amounts pleaded in the Complaint and audit findings if any, including delinquent

contributions and dues, liquidated damages, interest, audit costs, and attorneys' fees and

costs.

ENTER: *Charter Norgle*

The Honorable Charles R. Norgle
United States District Court Judge

Dated: 5-18-07



EXHIBIT
A

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles R. Norgle | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 07 C 1829 | **DATE** | 5/18/2007 |
| **CASE TITLE** | LABORERS' PENSION FUND, et al.  Vs. M & M Maintenance, Inc. And Marc Fricke | | |

**DOCKET ENTRY TEXT**

Motion for Default is granted.  Status hearing is set for July 27, 2007 at 9:30 a.m.

■ [ For further detail see separate order(s).]                                   Notified counsel by telephone.

| | Courtroom Deputy Initials: | EF |
|---|---|---|

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| LABORERS' PENSION FUND, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 07 C 1829 |
| v. | ) | |
| | ) | Judge Norgle |
| M & M MAINTENANCE, INC., an | ) | |
| involuntarily dissolved Illinois corporation, | ) | |
| and MARC FRICKE, individually, | ) | |
| | ) | |
| Defendants. | ) | |

## AFFIDAVIT OF MICHAEL CHRISTOPHER

MICHAEL CHRISTOPHER, being first duly sworn on oath, deposes and states as follows:

1.      I am a Field Representative employed by the Laborers' Pension Fund and the Laborers' Welfare Fund of the Construction and General Laborers' District Council of Chicago and Vicinity (hereinafter collectively referred to as the "Funds"), Plaintiffs in the above-referenced action. My responsibilities include oversight of the collection of amounts owed by Defendant M&M Maintenance, Inc., (hereinafter "Company"). This Affidavit is submitted in support of the Laborers' Funds' Motion for Judgment in Sum Certain. I have personal knowledge regarding the statements contained herein.

2.      On or about August 2, 2002, the Company signed an Independent Construction Industry Collective Bargaining Agreement ("Agreement") with the Construction and General Laborers' District Council of Chicago and Vicinity ("District Council") and Laborers' Local Union No. 76. A true and accurate copy of the Agreement is attached hereto as Exhibit B-1. Pursuant to the terms of the Agreement, the Company is bound to the terms of the relevant collective bargaining agreements



EXHIBIT
B

incorporated by reference in the Agreement ("Agreements") and the Funds' respective Agreements and Declarations of Trust.

3.    Pursuant to agreement, the Funds have been duly authorized to act as collection agents on behalf of the District Council for union dues owed to the District Council.

4.    The Agreement, Agreements, and the Funds' respective Agreements and Declarations of Trust, to which the Company is bound, require that the Company submit benefit and union dues reports and contribution payments by the tenth day of the following month. Benefit contributions which are not received within thirty days of this date are assessed liquidated damages in the amount of 20 percent of the principal amount of delinquent contributions, and interest at a rate of prime plus 2 per cent as charged by the JP Morgan Chase Bank from the date of delinquency forward. Dues which are not received by the tenth day of the following month are assessed liquidated damages in the amount of 10 percent. The Agreement, Agreements, and the Funds' respective Agreements and Declarations of Trust also obligate the Company to submit its books and records to the Funds for periodic audits to determine benefit contribution compliance. A copy of the relevant portions of the Agreements is attached as Exhibit B-2; a copy of the relevant portions of the Amended Agreement and Declaration of Trust creating the Laborers' Pension Fund is attached as Exhibit B-3; a copy of the relevant portions of the Amended Health and Welfare Department of the Construction and General Laborers' District Council is attached as Exhibit B-4; and a copy of the Agreement and Declaration of Trust Establishing the Construction and General Laborers' District Council of Chicago and Vicinity Training Trust Fund is attached hereto as Exhibit B-5.

2

5.   An audit of the Company's books and records was conducted for the time period of January 1, 2004 through May 31, 2007. The audit revealed the following delinquencies:

| | |
|---|---|
| Welfare Fund | $ 447.60 |
| 10% Liquidated Damages | $  89.52 |
| Interest | $  92.24 |
| Pension Fund | $ 290.40 |
| 10% Liquidated Damages | $  58.08 |
| Interest | $  46.38 |
| Training Fund | $  10.20 |
| 10% Liquidated Damages | $   2.04 |
| Interest | $   0.45 |
| Dues | $ 124.23 |
| 10% Liquidated Damages | $  12.42 |
| LDCLMCC | $  27.00 |
| 10% Liquidated Damages | $   2.70 |
| Interest | $   1.27 |
| ISPA | $  18.00 |
| 10% Liquidated Damages | $   3.60 |
| Interest | $   1.01 |
| LECET | $  11.25 |
| 10% Liquidated Damages | $   1.13 |
| Interest | $   0.54 |
| Accumulated Liquidated Damages For late paid July and September, 2004 benefits reports | $ 457.43 |
| **TOTAL** | **$1,697.49** |

A true and accurate copy of the audit is attached hereto as Exhibit B-6. A true and accurate copy of my audit summary sheet is attached hereto as Exhibit B-7.

6.   The cost of the audit was $772.50.

FURTHER AFFIANT SAYETH NAUGHT.

Michael Christopher

Subscribed and sworn to before me
this 15th day of August, 2007

Notary Public

"OFFICIAL SEAL"
Susan M. Diforti
Notary Public, State of Illinois
My Commission Expires Oct. 5, 2008

3

AUG.13'2002 09:30 6306558853          Laborers District Council          #6870 P.001/006



# CONSTRUCTION & GENERAL LABORERS'
## DISTRICT COUNCIL OF CHICAGO AND VICINITY
### AFFILIATED WITH THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, AFL-CIO
101 BURR RIDGE PARKWAY • SUITE 300 • BURR RIDGE, IL 60527 • PHONE: 630/655-8299 • FAX: 630/655-8853

## INDEPENDENT CONSTRUCTION INDUSTRY COLLECTIVE BARGAINING AGREEMENT

It is hereby agreed and agreed by and between _M&m Maintenance_ ("Employer") and the Construction and General Laborers' District Council of Chicago and Vicinity, Laborers' International Union of North America, AFL-CIO ("Union"), representing and encompassing its affiliated Local Unions, including Local Nos. 1, 2, 4, 5, 6, 25, 75, 76, 96, 118, 149, 152, 225, 269, 288, 582, 681, 1001, 1006, 1035, 1092, together with any other Local Unions that may come within the Union's jurisdiction ("Local Union"), and encompassing the geographical area of Cook, Lake, DuPage, Will, Grundy, Kendall, Kane, McHenry and Boone counties, Illinois, that:

1. Recognition. The Employer, in response to the Union's request for recognition as the majority 9(a) representative of its Laborer employees, and has thereon offer to show evidence of its majority support, hereby recognizes the Union under Section 9(a) of the Act as the sole and exclusive collective bargaining representative for its employees now and hereafter employed in the Laborer bargaining unit with respect to wages, hours and other terms and conditions of employment without the need for a Board certification. The Employer has not disputed its claims for purposes of collective bargaining with the Union by any person, entity or association, and hereby revokes its prior recognition of bargaining rights, if any. The Employer further voluntarily recognizes the Union to be the exclusive bargaining agent for its present, orary or association thereby this term of this Agreement ...

2. Labor Contract. The Employer affirms and accepts the applicable Collective Bargaining Agreements, as designated by the Union, between the Union and the Builders Association of Chicago and Vicinity, the Illinois Road Builders Association, the Underground Contractors Association, the Mason Contractors Association of Greater Chicago, the ...

3. Dues Checkoff. The Employer shall deduct from the wages of employees perform working dues in the amount of 1.5% of gross wages, or such other amount as directed by the Union, and shall remit monthly to the designated Union office the sums so deducted, together with an accurate list showing the employees from whom dues were deducted ...

4. Work Jurisdiction. The Agreement covers all work within the primary work jurisdiction as set forth in the Union's Statement of Jurisdiction ...

5. Fringe Benefits. The Employer agrees to pay the amount that it is bound to pay under said Collective Bargaining Agreements, Benefit Funds, the Fox Valley Benefit ...

When Laborers covered by this Agreement perform work outside the Chicago area, the Employer shall, if covered under a local LIUNA-affiliated labor agreement, in the area, contribute to the local fringe benefit funds in the amounts set forth in the local agreement ...

6. Wages and Industry Funds. The Employer shall pay all the negotiated hourly wages, fringe benefits and industry fund contributions. It is bound to pay under the applicable Collective Bargaining Agreements, including ...

7. Contract Enforcement. All grievances arising hereunder shall, at the Union's discretion, be submitted to the Chicago District Council Grievance Committee for final and binding disposition ...

8. Successors. In the event of any change in the ownership, management or operation of the Employer's business or substantially all of its assets, by sale or otherwise ...

9. Termination. This Agreement shall remain in full force and effect from June 1, 2001 ...

10. Executive. The Employer acknowledges and accepts the foregoing Agreement on the period as it may have the original signatures. The Employer further acknowledges receipt of a copy of the complete Joint Agreements.

Dated:  8-2  , 20 02

ACCEPTED:
Laborers' Local Union No.  76
By:  _Anthony _____
CONSTRUCTION AND GENERAL LABORERS'
DISTRICT COUNCIL OF CHICAGO AND VICINITY
By:  _Frank Riley, President & Sec'y/Treasurer_
By:  _Agnes T. Donnelly, Business Manager_
For Office Use Only:          IRBA-X6

_M&m Maintenance, Inc_
(Employer)
FEIN No.:  30-
_Marc Fricke  Vice President_
(Print Name and Title)
_Marc Fricke_
(Signature)
151 N. 22nd Ave.
(Street)
Melrose Park, IL 60160
(City, State and Zip Code)
708-343-____    708-343-3331

32885

WHITE - LOCAL UNION  •  CANARY - TRUST FUND  •  PINK - DISTRICT COUNCIL  •  GOLD - EMPLOYER

RECEIVED AUG 1 2 2002 FIELD DEPT

EXHIBIT
B-1

JUNE 1, 2001 TO MAY 31, 2006

# ROAD BUILDING AGREEMENT

between the

ILLINOIS ROAD BUILDERS ASSOCIATION

Represented by the

MID-AMERICA REGIONAL BARGAINING
ASSOCIATION

and the

CONSTRUCTION AND GENERAL
LABORERS' DISTRICT COUNCIL
OF CHICAGO AND VICINITY

1


EXHIBIT
B-2

provide
written

Between December 1st and March 15th, Saturday may be used as a make-up day at straight time while tending masons whose Local Unions observe similar conditions; provided, however, that after forty (40) hours have been worked time and one-half will be paid.

## Article IV
## HOLIDAYS

Except to protect life or property, there shall be no work performed on Sunday or on the following holidays: New Year's Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day and Christmas Day, or on days when such holidays are celebrated, and all hours worked shall be paid for at the double time rate.

When a holiday falls on Monday through Friday, make-up day on Saturday shall be paid at time and one-half for the first eight (8) hours and double time thereafter. If a holiday falls on a Sunday, it shall be celebrated on the following Monday. If a holiday falls on a day other than Sunday, it shall be celebrated on that date.

## Article V
## WAGES

**Paragraph 1.** The rate of wages exclusive of fringe benefits to be paid in this trade for the period June 1, 2001 to and including May 31, 2006, shall be as set forth below for the respective following classifications as further defined herein.

The wage rates include an increase of $1.65 per hour effective June 1, 2001 to May 31, 2002 for a wage rate of $26.65 per hour which includes the dues deduction. June 1, 2002 to May 31, 2003, $1.80 per hour increase to be allocated between wages and fringe benefits by the Union in its sole discretion. June 1, 2003 to May 31, 2004, $2.00 per hour increase to be allocated between wages and fringe benefits by the Union in its sole discretion. June 1, 2004 to May 31, 2005, $2.20 per hour increase to be allocated between wages and fringe bene-

er day,
through
rk day
e desig-
ek, but
ployer
days at
ust be
to the
except
at the

2 1/2)
from
ate of
pply.

ne for
is the
e and
arting
nge is
ll be
e and

rates
first
paid
tions
te of

fits by the Union in its sole discretion. June 1, 2005 to May 31, 2006, $2.20 per hour increase to be allocated between wages and fringe benefits by the Union in its sole discretion.

The foregoing allocations may include allocations to LECET. For the economic increases listed above, the Union shall also have discretion to allocate to another fund(s) to be established, up to a maximum of thirty cents ($.30) per hour over the term of the Agreement (up to twelve cents ($.12) in the first year and up to eighteen cents ($.18) over the remaining years). The fund(s) shall indemnify and hold harmless Employers who have assigned their bargaining rights to a MARBA-represented Association for purposes of collective bargaining with the Union, and the MARBA-represented Associations party to this Agreement, and MARBA, as regards the creation, implementation and operation of the fund(s), other than the obligation to contribute the designated amounts to the fund(s), and such indemnity and hold harmless shall include the payment of all reasonable costs and attorney's fees actually incurred on behalf of the Employer. The Employer shall give prompt notice to the fund(s) of any claims asserted or suits filed that are subject to indemnification.

| CLASSIFICATION | 6/1/01 | 6/1/02 | 6/1/03 | 6/1/04 | 6/1/05 |
|---|---|---|---|---|---|
| Laborers and Helpers | $26.65 | $1.80 | $2.00 | $2.20 | $2.20 |
| Rakers and Lutemen | 26.925 | | | | |
| Machine-Screwmen | 26.925 | | | | |
| Asphalt Tampers and Smoothers | 26.925 | | | | |
| Kettlemen | 26.925 | | | | |
| Mixermen | 26.925 | | | | |
| Drum-Men | 26.925 | | | | |
| Jackhammermen (Asphalt) | 26.925 | | | | |
| Paintmen | 26.925 | | | | |
| Mitre Box Spreaders | 26.925 | | | | |

to be allocated between wages and fringe benefits by the Union in its sole discretion. (See above paragraph)

Laborers on Birch, Overman and Similar Spreader Equipment . . . . . . . . . . . 26.925

Laborers on Apsco . . . . . . . 26.925

Laborers on Air Compressors . . . . . . . . . . 26.925

Material Expeditor (Asphalt Plant Laborers) . . . . . . . . 26.65

Paving Form Setters . . . . . . 26.925

Jackhammerman (Concrete) 26.925

Power Drive Concrete Saws, Other Power Equipment . . . 26.925

Cement Gun Nozzle (Laborers) Gunite . . . . . . . 26.80

Cement Gun Laborers . . . . . 26.725

Street Paving, Grade Separation, Sidewalk Curb and Gutter Strippers and all Other Laborers . . . . . . . . . . . . . 26.65

General Foreman of Laborers . . . . . . . . . . . . 28.225

Superintendent . . . . . . . . . 28.225

Foremen of Laborers . . . . . . 27.80

Asphalt Foreman . . . . . . . . 27.80

Cut-Out Foreman . . . . . . . . 27.80

Street Repair Foreman . . . . 27.80

Apprentices (1st 6 months) . . . . . . . . . . . 60% of base rate: ($15.99)

Apprentices (2nd 6 months) . . . . . . . . . . 70% of base rate: ($18.655)

Apprentices (3rd 6 months) . . . . . . . . . . . 80% of base rate: ($21.32)

Apprentices (4th 6 months) . . . . . . . . . . 90% of base rate: ($23.985)

Apprentices (after 24 months) . . . . . . . . 100% of base rate: ($26.65)

Wages must be paid by payroll check and shall include a stub or statement showing the number of straight time and overtime hours worked and rate of pay.

Dosimeter Use A premium of One ($1.00) Dollar per hour shall be paid to any Laborer required to work

with a dosimeter used for monitoring nuclear exposure or with any similar instrument or measuring device.

**Power Pac** When a Laborer uses a power driven piece of equipment he shall be paid the rate of pay of the tool at the end of the power pac.

**Asbestos Use** For the period June 1, 2001 through May 31, 2002, a premium of fifteen cents ($.15) per hour shall be paid to any Laborer required to work with asbestos who is a certified asbestos Laborer licensed by the State of Illinois as an Asbestos Abatement worker. Thereafter, no premium shall be paid.

**Paragraph 2. WELFARE:** Beginning the period from June 1, 2001 to May 31, 2002, the Employer agrees to make Health and Welfare contributions of $3.45 per hour for each hour worked by all employees covered by this Agreement in addition to the wages herein stipulated. This $3.45 per hour shall be paid to the Health and Welfare Department of Construction and General Laborers' District Council of Chicago and Vicinity or a designated appointee at the end of each month.

That for the periods June 1, 2002 to May 31, 2003; June 1, 2003 to May 31, 2004; June 1, 2004 to May 31, 2005; June 1, 2005 to May 31, 2006; that on May 1 of each year, if able, but not later than June 1, the Union in its sole discretion, shall determine the amount of additional contributions to Welfare and/or Pension and Training to be allocated from the economic package for that year. (See Article V, Paragraph 1)

The Employer agrees to bound by the Agreements and Declarations of Trust establishing the Health and Welfare Department of Construction and General Laborers' District Council of Chicago and Vicinity, as well as any amendments thereto.

**Paragraph 3. PENSION:** Beginning June 1, 2001 the Employer agrees to make a pension contribution of $2.65 per hour for each hour worked by all employees covered by this Agreement in addition to the wages and welfare

12

payments herein stipulated. This $2.65 per hour shall be paid to the Laborers' Pension Fund or to a designated appointee at the end of each month.

That for the periods June 1, 2002 to May 31, 2003; June 1, 2003 to May 31, 2004; June 1, 2004 to May 31, 2005; June 1, 2005 to May 31, 2006; that on May 1 of each year, if able, but not later than June 1, the Union in its sole discretion, shall determine the amount of additional contributions to Welfare and/or Pension and Training to be allocated from the economic package for that year. (See Article V, Paragraph 1)

The Employer agrees to bound by the Agreements and Declarations of Trust establishing the Laborers' Pension Fund, as well as any amendments thereto.

The parties agree that the Employer shall make lump sum contributions to employee fringe benefit accounts, administered by the Trustees on behalf of each employee. It is further agreed that such contribution shall be accompanied by a breakdown of payment according to appropriate benefits.

The Trustees of the Welfare Fund and the Trustees of the Pension Fund shall, among other things, have authority to determine the type and amount of benefits to be provided in each of said funds, the eligibility rules governing entitlement to benefits, and whether and to what extent benefits are to be provided for covered employees.

The failure of the Employer to contribute to the said Welfare or Pension Fund, as provided herein, shall for the purposes of the remedies the Union may pursue, be deemed the same as the failure of the Employer to pay wages, and the Union shall be permitted to remove workers whom they represent for non-payment of such contributions, anything to the contrary in this Agreement notwithstanding.

A grace period of thirty (30) days shall be granted for Employers to submit reports and contributions as provided. Said reports and contributions not received during

this grace period shall be assessed liquidated damages amounting to ten (10%) percent of the amount of the contributions which are owed. The Employer acknowledges that the liquidated damages shall be used to defer administrative costs arising by said delinquency and acknowledges the costs to be actual and substantial, though difficult to ascertain. However, the Employer acknowledges these costs to be at a minimum of ten (10%) percent, waiving the necessity of any additional proof thereof. In addition, the delinquent contributions shall bear interest at a maximum legal rate of interest per annum from the due date until they are paid.

Further, in the event the Trustees refer the account to legal counsel for collection, the delinquent Employer shall be liable for reasonable attorneys' fees, and for all reasonable costs incurred in the collection process, including court fees, audit fees, etc.

Reasonable attorneys' fees shall mean: All reasonable attorneys' fees in the amounts for which the Trustees become legally bound to pay, including recovery of liquidated damages, interests, audit costs, filing fees, and any other expenses incurred by the Trustees.

The Trustees of the aforementioned Welfare and Pension Funds and the Union shall have the authority to audit the books and records of a participating Employer, either directly or through their authorized representative, whenever such examination is deemed necessary for the purpose of compliance with the provisions of this Agreement, including the obligation to remit Union Dues under Article VII.

Each participating Employer shall make its books and records available to the Trustees for such purpose. In the event the audit discloses that the Employer, during the period of the audit, had underpaid its contributions and/or wages, the Employer shall be liable for the costs of the examination, including but not limited to, audit fees and reasonable attorneys' fees. The Trustees' authority to

waive any costs shall be governed by the terms of the Trust Agreement.

**Section 415 Excess Benefit Fund.** A Section 415 Excess Benefit Fund shall be established for the purpose of providing alternative benefit to any employees of the Employer who become unable to receive the entire amount of the accrued pension benefits to which they would be entitled under one or more of the pension plans sponsored by their Employer because of limitations established by Section 415 of the Internal Revenue Code. The Employer may be required and directed by the Board of Trustees of the Excess Benefit Fund to contribute a portion of its agreed-upon "pension" contribution to the Section 415 Excess Benefit Fund and shall not increase the Employer's cost beyond the amount that the Employer is obligated to contribute to the Laborers' Pension Fund and that the funding of the Section 415 Excess Benefit Fund shall be fully tax deductible to the Employer for Federal Income Tax purposes. The Employer hereby agrees that the Board of Trustees of any such Section 415 Excess Benefit Fund shall be authorized to determine each year the amount that will be contributed by the Employer and the amount to be credited to the account of any eligible retiree for payment in lieu of accrued benefits that would exceed the limits set by Section 415 of the Internal Revenue Code.

**Paragraph 4. SUPERVISORS:** To the extent permissible by the Internal Revenue Service or any Federal Act, and for the purposes of Paragraphs 2 and 3 of Article V of this Agreement only, the bargaining unit shall also include those persons in the employ of an Employer who are supervisors, as defined in the Labor Management Relations Act, as amended; and who at one time were employee members of the bargaining unit herein on whose behalf contributions were required to be made to the trust funds described in the aforesaid Paragraphs 2 and 3 of Article V hereof.

# Article VI
## BONDING TO GUARANTEE WAGE PAYMENTS AND WELFARE AND PENSION CONTRIBUTIONS

**Paragraph 1.** All Employers shall procure, carry and maintain a surety bond in form and amount satisfactory to the Union, but not less than in the principal sum of $5,000.00, to guarantee payment of wages, Pension and Welfare Trust contributions, during the term of this Agreement.

**Paragraph 2.** If the Employer employs between seven (7) and ten (10) Laborers, the surety bond shall be increased to $15,000. If the Employer employs between eleven (11) and twenty (20) Laborers, the surety bond shall be increased to $25,000. If the Employer employers twenty-one (21) to forty (40) Laborers, the surety bond shall be increased to $35,000. If the Employer employs forty-one (41) or more Laborers, the surety bond shall be increased to $45,000.

**Paragraph 3.** The Employer shall give notice to the Union and the appropriate Fund Office in writing not later than ten (10) days after the occurrence of any of the following events relating to the Employer, occurring after the date hereof:

(a) Formation of Partnerships;

(b) Termination of business;

(c) Change of name commonly used in business operation;

(d) Change in form of business organization;

(e) Incorporation of business;

(f) Dissolution of corporation;

(g) Name and business organization of successor; and

(h) Admission to or withdrawal from any association operating as a multi-employer bargaining unit.

## Article VII
## CHECK-OFF & DUES DEDUCTIONS

**Paragraph 1.** Employers also agree to deduct from the net earnings payable to an employee covered by this Agreement, initiation fees and quarterly Union dues insofar as permitted by state and federal laws upon receipt and in accordance with a duly executed authorization form from the employees. Said authorization form shall not be revocable for a period of more than one (1) year or prior to the termination date of this Agreement, whichever occurs sooner.

**Paragraph 2.** All Employers covered by this Agreement shall deduct from the wages of employees covered by said contract, working dues in the amount of one and one-half percent (1.5%) of gross wages or such amount approved by the Union for each hour worked and shall remit monthly to the Union office the sums so deducted, together with an accurate list of employees from whose wages said dues were deducted and the amounts applicable to each employee, not later than the 10th day of the month next following the month for which such deductions were made. Dues remittance reports shall include a report of the hours worked and wages earned by each Laborer. Employers who fail to timely remit Union dues shall be assessed an additional ten percent (10%) liquidated damages.

**Paragraph 3.** The Union will submit to the Employer a written statement of respective amount of initiation fees and Union dues due the Union. The Employer will then deduct said amounts from each employee's pay every weekly pay period until the total amount of initiation fees and dues have been deducted. Deductions from the weekly wages shall be not less than Twenty-five ($25.00)

17

Dollars per week to apply to initiation fees and dues until fully paid.

**Paragraph 4.** Deductions shall be remitted to the Union or to a designated appointee of the Employer promptly, and the Local Union shall acknowledge receipt of the money. The Employer shall furnish the Union with a record of those for whom deductions have been made, the amount of the deductions, and a list of absentees.

**Paragraph 5.** employees may authorize deductions of more than the aforesaid Twenty- five ($25.00) Dollars per week, if they so desire, in order to complete early payment of initiation fees and quarterly dues.

**Paragraph 6.** It is the intention of the parties that such deductions shall comply with the requirements of Section 302(c)(4) of the Labor Management Relations Act of 1947, as amended, and that such deductions be made only pursuant to written assignments from each employee on whose account such deductions are made, which assignment shall not be revocable for a period of more than one (1) year, or prior to the termination date of this Agreement, whichever occurs sooner.

**Paragraph 7.** The Union agrees that it will indemnify and hold harmless the Employer from any and all claims, suits, causes of action, or otherwise, as regards the creation and administration of the dues check-off established by this Article and such indemnity and agreement to hold harmless shall include the payment of costs and attorneys' fees on behalf of the beneficiaries of such indemnity.

**Paragraph 8.** Should any Employer fail to remit dues to the Union as required under this Agreement, the Employer shall be liable for and pay all costs of collection, including reasonable audit expenses and reasonable attorney fees and costs. The Union may file suit, or remove employees that it represents, or both, for non-remittance or underpayment of dues by an Employer.

# INDUSTRY FUNDS

**Paragraph 1.** Each Employer shall pay into the MID-WEST CONSTRUCTION INDUSTRY ADVANCEMENT FUND (hereinafter sometimes referred to as the "Industry Fund"), or such other fund as MARBA may in its sole discretion designate at any time during the term of this Agreement, the amount of six cents ($.06) for each hour worked for the Employer by those of his employees covered by this Agreement.

Each Employer shall pay into the Chicago-Area Laborers-Employers Cooperation and Education Trust ("LECET"), the amount of five cents ($.05) for each hour worked for the Employer by those of his employees covered by this Agreement.

Each Employer shall pay into the Laborers' District Council Labor-Management Cooperation Committee ("LDC/LMCC"), the amount of twelve cents ($.12) for each hour worked for the Employer by those of his employees covered by this Agreement.

Each contractor shall contribute one cent ($.01) per hour for each hour worked by his/her employees covered by this Agreement to the Construction Industry Service Corporation ("CISCO"), a not for profit corporation.

**Paragraph 2.** The Employer agrees to be bound by the Agreement and Declaration of Trust establishing the Industry Fund, as well as any amendments thereto, and agrees to be bound by all actions taken by the Trustees of said Industry Fund pursuant to said Agreement and Declaration of Trust and amendments thereto. The Employer agrees to be bound by the Agreements and Declarations of Trust establishing the LECET and LDC/LMCC, as well as any amendments thereto.

**Paragraph 3.** Inasmuch as the existence and utilization of these Industry Fund(s) should result in increased construction and, therefore, in increased construction job opportunities for employees, the Union agrees to cooper-

ate in assuring that the contributions required by this Article are in fact made by Employers bound by this Agreement.

## SAFETY FUND

**Paragraph 4.** For the period June 1, 2001 to May 31, 2006 each Employer shall contribute one cent ($.01) per hour for each hour worked by its employees covered by this Agreement to the Chicagoland Construction Safety Council, a not for profit corporation.

## Article IX
## STEWARDS

**Paragraph 1.** The Business Agent of the Union in whose jurisdiction a job or project is located shall have the right to appoint one Laborer employed on the job as Steward on said job or project. Such Steward shall be subject to the same terms of employment as any other employee, but taking into consideration that the Steward should be present during all working hours, all possible overtime work shall be assigned to all Stewards, if the Stewards do not replace another Laborer from that other Laborers' previously assigned duties.

**Paragraph 2.** The duties of the Steward shall include the checking of terms and conditions of work, safety conditions, starting dates of employment for new Laborers, whether Union or Non-Union, and report same to the Business Representative who appointed him. All Laborers employed on a job or project shall report to the Steward any differences or disputes which may arise in connection with the work or any part of it, and the Steward shall report same to the office of the Union. If it becomes necessary to discharge or lay off any Laborers because of completion of the work or otherwise, the Laborer appointed and acting as Steward shall not be discharged or laid off while other Laborers remain employed on the job or project so long as he is competent to perform the work. Nothing herein contained shall in any way restrict the right of any Employer to discharge a Steward for

cause, upon notification to the Business Agent of the Local Union who appointed the Laborer to act as Steward.

**Paragraph 3.** Whenever one or more Laborers are required to work overtime, one of these Laborers shall be the regularly designated Steward if he is competent to do the work required; or if he cannot work, he will call the Business Manager and the Business Manager will designate someone on this job to act as Steward.

**Paragraph 4.** Where an Employer has been found to have engaged in:

(a) a serious violation of the wage provisions of this Agreement by the Joint Grievance Committee or by an arbitrator;

(b) a violation of the fringe benefit provisions of this Agreement, by a court order or by a delinquency settlement agreement; or

(c) a violation of the rules of the apprenticeship program as determined by the JATC;

then for the next six (6) months of active laborer employment, the Union shall have the right to appoint and place a steward of its own choosing on a then-current job of that Employer.

## Article X
## SHIFT WORK

When necessary from Monday through Friday, the Employer shall have the right to work his employees in consecutive shifts of eight (8) hours for straight time, with one-half (1/2) hour for lunch during the shift which must be paid for, and not less than, the established overtime rates for all hours worked over eight (8) hours each day. Employees shall receive eight (8) hours pay under this Section even if they are permitted to leave after seven and one-half (7 1/2) hours, and it shall be a violation of this Agreement if an employee does not receive eight (8) hours

# RESTATED AGREEMENT

AND

# DECLARATION OF TRUST

CREATING

# LABORERS' PENSION FUND

With Amendments Through
May 31, 2002



EXHIBIT
B-3

# TABLE OF CONTENTS

ARTICLE                                                                    PAGE

I    CERTAIN DEFINITIONS ................................... 2
     Pension Fund ......................................... 2
     Employer ............................................. 2
     Employee ............................................. 5
     Trustees ............................................. 7
     Pension Plan ......................................... 7
     Contributions ........................................ 7
     Benefits ............................................. 7
     Written Agreement .................................... 7
     ERISA ................................................ 8
     Collective Bargaining Agreement or Participation Agreement .......... 8
     Covered Employment ................................... 8
     Participant .......................................... 8
     Pensioner ............................................ 9
     Trust Agreement ...................................... 9
     Trustees ............................................. 9
     Union ................................................ 9

II   GENERAL PURPOSES OF PENSION FUND ..................... 9

III  OPERATION AND ADMINISTRATION OF PENSION FUND .... 10
     The Board of Trustees ................................ 10
     Employer Trustees .................................... 10
     Union Trustees ....................................... 11
     Acceptance of Trusteeship ............................ 12
     Jointly Appointed Arbitrator ......................... 12
     Term of Trustees ..................................... 13

IV   RELATING TO THE TRUSTEES ............................ 13
     General Powers ....................................... 13
     Appointment of Investment Managers ................... 18
     Duty of Trustee Re: Assets Managed by Investment Manager ........ 18
     Allocation of Trustee Responsibilities. .............. 19
     Insurance ............................................ 19
     Compensation and Expenses ............................ 19

| V | MANNER OF ACTING BY TRUSTEES ....................... | 20 |
|---|---|---|
| | In General ......................................... | 20 |
| | Record of Trustees' Actions ......................... | 21 |
| | Disbursement of Trust Funds ........................ | 22 |
| | Execution of Notices and Documents .................. | 22 |
| | | |
| VI | RELATING TO THE PENSION PLAN ..................... | 22 |
| | In General ......................................... | 22 |
| | Provisions of Pension Plan .......................... | 23 |
| | Operation of Pension Plan .......................... | 23 |
| | | |
| VII | FUNDING PENSION PLAN BENEFITS ..................... | 24 |
| | In General ......................................... | 24 |
| | Default in Payment of Contributions .................. | 25 |
| | Report on Contributions and Production of Records ..... | 27 |
| | | |
| VIII | FILING CLAIMS AND REVIEW OF DENIAL OF CLAIMS ..... | 28 |
| | Filing of Claim ..................................... | 28 |
| | Adjudication of Claims and Appeals .................. | 29 |
| | | |
| IX | DUTY TO COOPERATE ................................. | 29 |
| | | |
| X | MISCELLANEOUS PROVISION .......................... | 30 |
| | Vested Rights ...................................... | 30 |
| | Encumbrance of Benefits ............................ | 30 |
| | Payments to Persons Under Disability ................ | 31 |
| | Situs .............................................. | 32 |
| | Construction of Terms .............................. | 32 |
| | Notification of Trustees ............................. | 32 |
| | Severability ........................................ | 32 |
| | Counterparts ....................................... | 33 |
| | | |
| XI | CHANGE OF TRUSTEE ................................. | 33 |
| | Resignation ........................................ | 33 |
| | Removal of Trustee and Appointment of Successor Trustee .......... | 33 |
| | Vacancies .......................................... | 34 |
| | | |
| XII | AMENDMENT AND TERMINATION ...................... | 35 |
| | Amendment ........................................ | 35 |
| | Termination ........................................ | 36 |
| | Notification of Termination .......................... | 37 |

## RESTATED AGREEMENT AND DECLARATION OF TRUST
## LABORER'S PENSION FUND

THE AGREEMENT AND DECLARATION OF TRUST creating the LABORERS' PENSION FUND, originally made and entered into the 1st day of June, 1963, was amended from time to time thereafter and was amended and restated as of January 1, 1976, and amended by substituting for it this Agreement by and between the CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY, A.F.L.-C.I.O., representing its affiliated Local Unions and the members thereof (the "Union") and the BUILDERS' ASSOCIATION OF CHICAGO, UNDERGROUND CONTRACTORS ASSOCIATION, MASON CONTRACTORS' ASSOCIATION OF COOK COUNTY, ILLINOIS ROAD BUILDERS' ASSOCIATION, CONCRETE CONTRACTORS' ASSOCIATION OF GREATER CHICAGO, EMPLOYING PLASTERERS' ASSOCIATION OF GREATER CHICAGO, and LAKE COUNTY CONTRACTORS ASSOCIATION and all other employer associations (the "Associations") who were parties to collective bargaining agreements with the Union or, its local affiliates, and with representatives of this Trust, for and on behalf of themselves and their respective members and other employers in the building and construction trades and related industries who are included in the term "Employers" (as defined in Section 2 of ARTICLE I) and agreed to be bound by this Agreement or who are otherwise so bound as provided as set forth in Section 2 of ARTICLE I;

Whereas, the Trust Agreement has been amended from time to time since 1976 and the Board of Trustees has agreed to restate the Trust Agreement with amendments adopted through May 31, 2002;

Now therefore, pursuant to their authority under Article XII, the Board of Trustees hereby amends and restates the Trust Agreement to read as follows:

## ARTICLE I

### CERTAIN DEFINITIONS

Unless the context or subject matter otherwise requires, the following definitions shall govern in this Agreement.

Section 1.    PENSION FUND.   The term "Pension Fund" means the Laborers' Pension Fund, a trust fund previously established and administered under the terms of this Agreement and includes all property of every kind held by the Trustees hereunder. The assets of the Pension Fund are to be used for the purposes generally described in Section 302 (c) of the Labor Management Relations Act of 1947, as amended by the applicable provisions of ERISA (as defined in Section 9 next below).

Section 2    EMPLOYER   The term "Employer" as used herein shall mean any Employer who:

(a)    Now or hereafter is a party to a Collective Bargaining Agreement with the Union, or any of its local affiliates, requiring periodic contributions to the

Pension Fund or who in the past has been a party to such a Collective Bargaining Agreement, if such agreement has not been terminated by its terms or by operation of law;

(b)    Is a party to any memorandum of understanding or memorandum of agreement or similar instrument with the Union, or any of its local affiliates, which by its terms incorporates by reference a complete Collective Bargaining Agreement which requires the parties thereto to make contributions to the Pension Fund;

(c)    In writing adopts and agrees to be bound by the terms and provisions of this Agreement as the same may be amended or modified from time to time, or

(d)    Is a party to any written instrument which evidences an agreement to be bound by the provisions of this Agreement, including but not limited to, a contribution report form listing the employees on whose behalf contributions are remitted and provisions expressly binding such Employer to the Agreement or otherwise evidencing such Employer's intention to be so bound by the making of such contributions;

(e)    By any course of conduct, including but not limited to, oral representations to Employees, representatives of the Union, Trustees, attorneys or other persons, ratifies or accepts the provisions of any Collective Bargaining Agreement which requires contributions to the Pension Fund or accepts any other

written instrument which binds such Employer to make contributions to the Pension Fund, and by which the Employer is estopped to deny such obligation;

(f)     Is a member of any of the associations named in Article III ("Associations"), or hereafter becomes a member of any of the Associations, named herein or who was a member at any time when representatives of said Associations commenced negotiations of a Collective Bargaining Agreement on behalf of its members whether or not said membership is held current at all times; or

(g)     Is a member of any other multi-employer bargaining unit, or hereafter becomes a member of any of said multi-employer bargaining unit, which has a Collective Bargaining Agreement with the Union.

The term "Employer" shall also mean the Union, for the purpose of providing benefits hereunder for the eligible Employees of the Union for whom the Union contributes to the Pension Fund.

The term "Employer" shall also mean the Board of Trustees and the boards of trustees of any funds sponsored by the Union that contribute to the Pension Fund for the purpose of providing benefits hereunder for eligible Employees of the Trust or fund.

A person or entity that has become an Employer under this Agreement pursuant to a Collective Bargaining Agreement or other written agreement with the Union shall continue

as such until it is no longer obligated pursuant to such a Written Agreement (as defined in Section 8 next below) or by the National Labor Relations Act or other legally enforceable obligation to make contributions to the Pension Fund.

Section 3.    EMPLOYEE.  The term "Employee" as used herein shall mean any of the following persons without regard to race, color, creed, national origin, religion or union membership.

(a)    Any person covered by a Collective Bargaining Agreement between an Employer and the Union or any of its local affiliates who is engaged in employment with respect to which the Employer is obligated by the Collective Bargaining Agreement to make contributions to the Pension Fund;

(b)    Any person employed by an Employer who performs work within the jurisdiction of the Union as said jurisdiction is set forth in any applicable Collective Bargaining Agreement or by any custom or practice in the geographic area within which the Employer operates and his Employees perform work;

(c)    Any person on whose behalf an Employer has made contributions to the Pension Fund and has reported same on a standard report form which contains a provision binding said Employer to the provisions of this Agreement or otherwise evidencing said Employer's intent to be so bound.

(d)     Any person employed by an Employer who has signed any memorandum of understanding incorporating by reference the provisions of any applicable Collective Bargaining Agreement or the provisions of this Agreement where such person is covered by such an agreement which incorporates this agreement by reference or both;

(e)     Any person who is not covered by a Collective Bargaining Agreement but on whose behalf his Employer is otherwise obligated to make contributions to the Pension Fund in accordance with the provisions of this Agreement who performs work which would be work performed by members of a bargaining unit recognized by the Employer or certified by the National Labor Relations Board if said person's Employer were a party to any of the standard collective bargaining agreements by and between the Union and any of the aforementioned Associations; or

(f)     Any Employee in a certified or recognized collective bargaining unit represented by the Union.

The term "Employee" shall also mean all eligible persons employed by the Union, on whose behalf the Union shall make payments to the Pension Fund at the times and at the rate of payment equal to that made by any other Employer who is a party to this Agreement.

The term "Employee" shall also mean all eligible persons employed by the Trust or a fund sponsored by the Union on whose behalf the Board of Trustees or trustees of said

fund shall make payments to the Pension Fund, at the times and at the rate of payment equal to that made by any other Employer who is a party to this Agreement.

Section 4. TRUSTEES. Subject to the provisions of this Agreement, the term "Trustees" shall include the Union Trustees, the Employer Trustees (all as described in ARTICLE III) and their successors designated and appointed in accordance with the terms of this Agreement who shall, collectively, serve as the members of the "Board of Trustees" (as described in ARTICLE III) hereunder.

Section 5. PENSION PLAN. The term "Pension Plan" shall mean the program of pension benefits (as described in ARTICLE VI) established by the Trustees.

Section 6. CONTRIBUTIONS. The term "Contributions" shall mean the monies paid to the Pension Fund by Employers on behalf of Employees pursuant to applicable Written Agreements (as defined in Section 8 next below) or as otherwise required hereby, which shall be held by the Trustees for the purposes set forth herein.

Section 7. BENEFITS. The term "Benefits" shall mean payments, whether from the principal or income, or both, of the Pension Fund for the benefit of Employees, their families and dependants, for pensions on retirement, disability or death of Employees.

Section 8. WRITTEN AGREEMENT. The term "Written Agreement" shall mean any agreement in writing which specifies the detailed basis on which contributions shall be made to the Fund together with any modification, amendment or renewals thereof, including but not limited to Collective Bargaining Agreements, Participation Agreements, memoranda

of understanding which incorporate by reference Collective Bargaining Agreements or this Agreement, report forms in accordance with which contributions are made and which obligate the Employer to the provisions of this Agreement, or any other agreement obligating the Employer signatory thereto to participate in or be bound by this Agreement and/or the Pension Plan established pursuant hereto.

Section 9. ERISA. The term "ERISA" means the Employee Retirement Income Security Act of 1974, as amended from time to time.

Section 10. COLLECTIVE BARGAINING AGREEMENT OR PARTICIPATION AGREEMENT. "Collective Bargaining Agreement" or "Participation Agreement" means a written agreement between the Union and an Employer or an association of Employers or a Participation Agreement between the Board of Trustees and an Employer which requires contributions to the Fund.

Section 11. COVERED EMPLOYMENT. "Covered Employment" means employment for which an Employer is obligated to contribute to the Pension Plan or employment with Employers prior to the establishment of the Pension Plan which, in the reasonable judgment of the Trustees, would have required contributions to the Pension Plan had the Pension Plan been in existence at the time of such employment.

Section 12. PARTICIPANT. "Participant" means a Pensioner or an Employee who meets the requirements for participation in the Plan or a former Employee who has acquired a right to a pension under the Pension Plan.

Section 13.  PENSIONER. "Pensioner" means an Employee awarded a pension in accordance with the terms of the Pension Plan.

Section 14.  TRUST AGREEMENT.  "Trust Agreement" means this Restated Agreement and Declaration of Trust establishing the Laborers' Pension Fund, dated originally as of June 1, 1963, restated as of January 1, 1976, as amended and as restated herein.

Section 15.  TRUSTEES. "Trustees" means the Board of Trustees as established and constituted in accordance with this Trust Agreement.

Section 16.  UNION.  "Union" means the Construction and General Laborers' District Council of Chicago and Vicinity and all the local unions now or hereafter affiliated therewith.


## ARTICLE II

## GENERAL PURPOSES OF PENSION FUND

The Pension Fund shall be used for the exclusive purpose of: (a) providing retirement income to Employees and/or income benefits to the beneficiaries or families of Employees in the event of death or disability of Employees as decided by the Trustees; and (b) for defraying reasonable expenses of administering and operating the Pension Plan in accordance with this Agreement.  Under no circumstances may the assets of the Pension Fund revert to any Employer or the Union, provided, however, that nothing in this

Agreement shall prevent the Trustees from returning to an Employer a contribution which is made by a mistake of fact provided such amount is returned by the Trustees to such Employer within one (1) year after payment of the contribution.

## ARTICLE III

## OPERATION AND ADMINISTRATION OF PENSION FUND

**Section 1.** **THE BOARD OF TRUSTEES.** Except as otherwise specifically provided, the Pension Fund shall be operated and administered by a Board of Trustees whose membership shall consist of six persons appointed as Trustees by the Associations (known as the "Employer Trustees") as provided in Section 2 next below and six persons appointed as Trustees by the Union (known as the "Union Trustees") as provided in Section 3 next below. The Association-appointed Trustees and the Union-appointed Trustees, may jointly appoint a person to act as a "Jointly Appointed Arbitrator ," as provided in Section 5 next below.

**Section 2.** **EMPLOYER TRUSTEES.** The current Employer Trustees are the following persons appointed by the Associations of Employers indicated:

(a) CHARLES COHEN, appointed by The Underground Contractors' Association;

(a) SAM VINCI, appointed by the Mason Contractors' Association of Greater Chicago;

-10-

(b)     ROBERT J. MADDEN and WAYNE E. HEALY, appointed by the Illinois Road Builders' Association; and

(c)     GARY LUNDSBERG, appointed by The Concrete Contractors Association of Greater Chicago.

(d)     ROGER T. VIGNOCCHI, appointed by the Lake County Contractors' Association.

Association-appointed Trustees must be appointed from the ranks of contributing Employers within the Associations' membership. A contributing Employer shall be defined as an Employer who is actively engaged in commerce and employs a minimum of two (2) laborers performing bargaining unit work for whom contributions are made, six months of every calendar year.

Failure of any Association to appoint a Trustee(s) within ninety (90) days of the occurrence of a vacancy shall allow the remaining Employer Associations to increase the number of their appointments, to be agreed upon by the remaining Associations within their own ranks or to invite a non-participating Employer Association to make appointment.

In the case of a non-participating Association, a majority of the sitting Trustees, both Employer and Union Trustees, will be required to enable the invitation of a new Association.

Section 3.     UNION TRUSTEES.  The current Union-appointed Trustees are JOSEPH COCONATO. JAMES P. CONNOLLY, J. MICHAEL LAZZARETTO, TOD MASTERS, FRANK RILEY and JEFF ZIEMANN.

Section 4.    ACCEPTANCE OF TRUSTEESHIP.  The Employer Trustees and, the Union Trustees have accepted their trusteeship hereunder.

Section 5.    JOINTLY APPOINTED ARBITRATOR.  Pursuant to applicable statutes and pursuant to the terms of this Agreement, a deadlock on a motion may arise.  In such event, the Motion may be withdrawn and no further action need be required to be taken.  If said Motion is not withdrawn, and the deadlock remains, then in the case of a deadlock, the Trustees shall meet for the purpose of agreeing upon a Jointly Appointed Arbitrator to break such deadlock by deciding the dispute in question.  In the event of the inability of the Trustees to agree upon the selection of such Jointly Appointed Arbitrator within a reasonable time, then, on the petition of either group of Trustees, the District Court of the United States where the Fund maintains its principal office shall appoint an impartial Arbitrator .  Such impartial Arbitrator  shall immediately proceed to hear the dispute between the Trustees and decide such dispute, and the decision and award of such Arbitrator shall be final and binding upon the parties.  The reasonable compensation of such Arbitrator and the costs and expenses (including, without limitation, attorneys' and reporter fees) incidental to any proceedings instituted to break a deadlock shall be paid by the Trust Fund.

The impartial Arbitrator shall have no power to add to, subtract from, or modify any of the terms of this Agreement and Declaration of Trust or the Plan and the term of said impartial Arbitrator shall end upon a decision resolving any deadlock.

**Section 6.** **TERM OF TRUSTEES.** Subject to the provisions of Article XI, the term of the Jointly Appointed Arbitrator shall end upon resolving of the deadlock. The Union and Employer Trustees shall serve for a term of three (3) calendar years.

## ARTICLE IV

## RELATING TO THE TRUSTEES

**Section 1.** **GENERAL POWERS.** The Trustees shall have the following powers, rights and duties in addition to those provided elsewhere in this Agreement or by law:

(a)     To exercise full discretionary authority to formulate the Pension Plan and to promulgate the Plan's rules and regulations and procedures, including procedures for collection of Employer contributions

(b)     To exercise full discretionary authority to construe and apply the provisions of this instrument and any amendment to it and the terms of the Pension Plan and any rules or procedures adopted for the administration of the Plan. The Trustees have full discretionary authority to modify and interpret the Pension Plan, all Plan documents, procedures, and the terms of the Trust Agreement. Their interpretation will be given the maximum deference permitted by law for the exercise of such full discretionary authority, and it will be binding for all involved persons. The construction adopted by the Trustees shall be

binding upon the Union , any Association, all Employers, all Employees and all Participants and beneficiaries who may be covered under the Plan.

(c)    Full discretionary authority to enter into any and all contracts and agreements for carrying out the terms of this Agreement and for the administration of the Trust Estate and Pension Plan and to do all acts as they, in their discretion, may deem necessary and advisable.

(d)    Full discretionary authority to establish and accumulate as part of the Trust Estate a reserve or reserves adequate, in the opinion of the Trustees, to carry out the purposes of this Agreement.

(e)    To pay out of the Pension Fund all real and personal property taxes, income taxes and other taxes of any and all kinds levied or assessed under existing or future laws upon or in respect to the Pension Fund or any money, property or securities forming a part thereof.

(f)    To receive contributions or payments from any source whatsoever to the extent permitted by law.

(g)    To have the exclusive authority to invest and reinvest the assets of the Pension Fund in property of any kind, real or personal, including retirement income, annuity or other individual contracts and group contracts issued by any life insurance company authorized to do business in the State of Illinois, but, excluding, however, any securities issued by an Employer hereunder.

(h)    In their discretion and to the extent they deem it wise, beneficial or necessary to appoint a bank or banks or trust company or trust companies to be designated as corporate trustee or custodian, and to enter into and execute a trust agreement or trust agreements with such bank or banks or trust company or trust companies, to provide for the investment and reinvestment of assets of the Pension Fund, with such other provisions incorporated therein as may be deemed desirable in the Trustees' sole discretion for the proper management of the Pension Fund and upon such execution to convey and transfer to such corporate trustee or custodian all or any portion of the assets of the Pension Fund.

(i)    To do all acts, whether or not expressly authorized herein, which the Trustees may deem necessary or appropriate for the advantageous management, investment and distribution of the Pension Fund and to carry out the purposes of the Plan. The Trustees may delegate authority to an investment consultant, investment managers, corporate trustee or custodian to manage, invest and monitor the performance of managers and to take appropriate action concerning any such investments, including the voting of proxies on securities.

(j)    To enter into a reciprocal agreement with any other pension fund relating to the contributions to be made by an Employer for any covered Employee

during periods when such Employee is engaged in performing work in the geographical area in which such other pension fund is operative and to provide for the transfer of contributions to reciprocal pension funds on behalf of participants in such funds.

(k)   To exercise full discretionary authority to compromise, arbitrate, settle, adjust or release any suit or legal proceeding, claim, debt, damage action or undertaking due or owing from or to the Pension Fund on such terms and conditions as the Trustees may deem advisable.

(l)   To appoint an "Administrator" who may be delegated all of the rights, duties and obligations of an "administrator" under the applicable provisions of ERISA.

(m)   To retain in cash (pending investment, reinvestment and payment of benefits) any portion of the Pension Fund and to deposit cash in any depositary (including the banking department of any bank acting as a corporate Trustee hereunder).

(n)   To establish and review periodically (but at least annually) a written funding policy for the investment of assets of the Pension Fund and review an annual actuarial valuation concerning Fund liabilities and assets.

(o)   To keep a written account showing the net worth of the Pension Fund, all investments, receipts, disbursements and other transactions made by the

Trustees and any agents of the Trustees, which accounts will be audited annually as provided herein and the annual report will be available for inspection at all times by the Union and the Employers at the principal office of the Pension Fund. All accounts of the Trustees will be kept in the manner determined by the Trustees upon advice of the Trustees' independent public accounting firm. If during the term of this Agreement, the Department of Labor issues regulations under ERISA regarding the valuation of securities or other assets for purposes of the reports required by ERISA, the Trustees shall use such valuation methods for purposes of the annual report described in this paragraph.

(p)     To lease or purchase such premises, materials, supplies and equipment, and to employ legal counsel, investment counsel and accounting, actuarial, clerical or other agents or employees as the Trustees deem necessary or desirable.

(q)     To merge the Pension Plan or consolidate it with another plan in accordance with the terms of ERISA and, in so doing, to transfer the Fund assets and administration of the Pension Plan to the trustees under such other plan, all as provided in the Pension Plan, or to accept the transfer of assets and liabilities from a fund to be merged into this Plan.

## Section 2.   APPOINTMENT OF INVESTMENT MANAGERS.

Notwithstanding any other provision of this Agreement, the Trustees may appoint an Investment Consultant to advise the Trustees on the allocation of investments, to assist in the selection of Investment Managers and custodians, to monitor the performance of Investment Managers and custodians, to vote proxies of the Trustees on securities and to represent the Trustees in such matters and one or more Investment Managers (as defined in Section 3(38) of ERISA) who shall have the power to manage, acquire, or dispose of specific portions of the Fund's assets as the Trustees shall determine and to act on behalf of the Trustees with respect thereto, subject to the following:

    (a)    Any direction given to the Trustees by an Investment Manager shall be given in writing or given orally and confirmed in writing as soon thereafter as is practicable.

    (b)    The indicia of ownership of the assets of the Pension Fund shall be held by the Trustees (or a custodian appointed by them) at all times.

## Section 3.   DUTY OF TRUSTEE RE: ASSETS MANAGED BY INVESTMENT MANAGERS.

Notwithstanding any other provision of this Agreement, , the Trustees shall adopt an investment policy, which shall be provided to an Investment Manager and, with respect to the assets of the Pension Fund that an Investment Manager has been appointed to manage. shall  follow the direction of the Investment Manager and shall not be liable to anyone:

-18-

(a)     For any act or omission of the Investment Manager with respect to such assets:

(b)     For failing to act with respect to such assets absent direction from the Investment Manager; or

(c)     For failing to review the day to day actions of the Investment Managers as to such assets.

Section 4.    ALLOCATION OF TRUSTEE RESPONSIBILITIES  The Trustees are specifically authorized to allocate among themselves any and all of the responsibilities, obligations and duties imposed on them by this Agreement, in which event, to the extent permitted by law, a Trustee to whom certain responsibilities, obligations or duties have not been allocated shall not be liable either individually or as a Trustee for any loss resulting to the Pension Fund arising from the acts or omissions on the part of another Trustee to whom such responsibilities, obligations or duties have been allocated.

Section 5.    INSURANCE.  The Trustees are specifically authorized to purchase insurance for themselves, the Plan and any other fiduciary under the Plan to indemnify the insureds against liability or losses occurring by reason of any act or omission of the insureds, provided, however, that any contract providing such insurance must contain provisions permitting recourse by the insurer against the insured.

Section 6.    COMPENSATION AND EXPENSES.  The Trustees shall not receive compensation  from the Pension Fund for services rendered hereunder but  shall be reimbursed for expenses actually and properly incurred in connection with the performance

of their responsibilities.   The Trustees are authorized to pay from the Pension Fund all of the Trustees' reasonable expenses, taxes and charges (including fees of persons employed by them in accordance with Section 1, paragraph (p) of this Article) incurred in connection with the collection, administration, management, investment, distribution and protection of the Pension Fund, including, without limitation, attendance at meetings and other functions of the Board of Trustees or its committees or while on business of the Board of Trustees, attendance at institutes and educational conferences, seminars or workshops for or on behalf of the Fund.

## ARTICLE V

## MANNER OF ACTING BY TRUSTEES

Section 1.    IN GENERAL.  The Trustees shall act by a majority of the Trustees by meeting, or by the unanimous written consent of the Trustees filed without meeting, subject to the following:

(a)    Meetings of the Trustees shall be held at such times and place as is agreed by the Trustees  and may be called on five (5) days' advance written notice by a majority of the Trustees or at any time, without notice, by the unanimous written consent of the Trustees.   The Trustees may agree on the use of conference calls to conduct meetings and telefacsimiles and e-mail to give

notice of consent to any action proposed to be taken by the Trustees or Administrator.

(b)    Two Employer Trustees and two Union Trustees shall constitute a quorum for any meeting.

(c)    Each Employer Trustee and Union Trustee, shall have one (1) vote on any matter brought before a meeting and, in his absence, such vote may be cast by another Trustee appointed by the Employers or the Union, as the case may be.

(d)    To the extent permitted by law, a Trustee absent from a meeting shall not be liable or responsible for any action taken or omitted to be taken at that meeting with respect to any matter.

The certificate of one Employer Trustee and one Union Trustee or of the Administrator that the Board has taken or authorized any action shall be conclusive in favor of any person relying on the certificate.

Section 2.    RECORD OF TRUSTEES' ACTIONS. The Trustees may elect, from among their number, a Secretary to serve for a term of three (3) calendar years or until a successor has been duly elected. The Administrator , or in his absence a person appointed by the Trustees , shall prepare a draft of the minutes of each meeting of the Board of Trustees and provide a copy thereof to each of the Trustees as soon as practicable after the meeting is held. The Trustees will review and approve minutes.

Section 3.    DISBURSEMENT OF TRUST FUNDS.  Any disbursement from the Pension Fund shall be by check signed by both a Union Trustee and an Employer Trustee who have been duly designated by the Union Trustees and the Employer Trustees, respectively, or checks may be signed by the Administrator on any matters designated by the Board of Trustees.  The Administrator may be authorized to pay any service providers in accordance with contracts approved by the Trustees.

Section 4.    EXECUTION OF NOTICES AND DOCUMENTS.  Except as specifically provided in Section 3 next above, the Board of Trustees may designate any equal number of Union Trustees and Employer Trustees to jointly execute, in writing, on behalf of the Board of Trustees, any notice or document, which executed notice or document shall be conclusive in favor of any person relying thereon.

## ARTICLE VI

## RELATING TO THE PENSION PLAN

Section 1.    IN GENERAL.  The Trustees shall establish and maintain a written Pension Plan which shall at all times be in the form of a plan intended to meet the requirements of Section 401(a) of the Internal Revenue Code of 1986, as amended (the "Code").

**Section 2.**   PROVISIONS OF PENSION PLAN.   Subject to the applicable provisions of the Code and ERISA, the Pension Plan established and maintained by the Trustees shall generally provide:

    (a)    Benefits for Employees and their beneficiaries in amounts and for the duration determined by the Trustees, based on their estimates of the benefits that can be provided from the Pension Fund without undue depletion or excessive accumulation;

    (b)    The requirements for eligibility for benefits as determined by the Trustees;

    (c)    For the collection of Employer contributions; (d)For claims and appeals procedures for Participants; and

    (e)    For the amendment of the Plan by the Trustees; a copy of any such amendment shall be filed with the minutes of the Board of Trustees.

**Section 3.**   OPERATION OF PENSION PLAN.   With respect to the operation of the Pension Plan, the Trustees shall have the following rights, powers and duties in addition to those provided to them elsewhere in this Agreement, the Pension Plan, or by law:

    (a)    To adopt such rules of procedure and regulations as in their opinion may be necessary for the proper administration of the Pension Plan and as are consistent with the terms of this Agreement and the Pension Plan.

(b)     To enforce the provisions of the Pension Plan and the rules and regulations adopted by the Trustees in a uniform manner with respect to individuals similarly situated.

(c)     To determine questions arising under the Pension Plan or this Agreement, including the power to determine the rights of Employees and their Beneficiaries, and their respective benefits, and to remedy ambiguities, inconsistencies or omissions.

## ARTICLE VII

## FUNDING PENSION PLAN BENEFITS

Section I.     IN GENERAL.   In order to fund the benefits provided under the Pension Plan, each Employer, for the period that it is obligated by a Written Agreement, shall make contributions to the Trustees at the times required by that agreement.  The rate of contributions shall be determined by the applicable Collective Bargaining Agreement or Participation Agreement, together with any amendments, supplements or modifications thereto.  Notwithstanding the preceding sentence, if an Employer is required to make contributions by reason of a Participation or other Written Agreement that is not a Collective Bargaining Agreement, the amount of its contributions shall be the same as the amount required by the Collective Bargaining Agreement in effect between the Employer Association and the Union which covers Employees performing similar work.  No

Employee shall be permitted to contract or otherwise agree with or permit his Employer to provide wage or benefit payments which do not conform with the amount of contributions required under the provisions of a Collective Bargaining Agreement or Participation Agreement and any such contract or agreement shall be null and void. It shall not be a defense to any claim by the Trustees or an Employee for payment of delinquent contributions from an Employer that such Employer has entered into an agreement with any Employee purporting to waive the Employee's right to strict compliance with the provisions of the applicable Collective Bargaining Agreement or a Participation Agreement. All contributions shall be paid in the manner and form required by the Trustees.

Section 2.     DEFAULT IN PAYMENT OF CONTRIBUTIONS. Nonpayment by an Employer of any contributions when due shall not relieve any other Employer of his obligation to make payments. The Trustees may take any action necessary to enforce payment of the contributions and penalties due hereunder, including, but not limited to, proceedings at law and in equity. Any such action shall not prejudice the Union in any action it may wish to take on account of such nonpayment. The Trustees are authorized to establish a reasonable and lawful grace period by which contributions must be received; Employers making contributions that are not received before the expiration of said period and any Employer making late payments due under an installment agreement shall be assessed liquidated damages of 10% of the amount of the contributions which are owed. All Employers party to or otherwise bound by this Agreement acknowledge that the

liquidated damages will be used to defer administrative costs arising by said delinquency and acknowledge the costs to be actual and substantial though difficult to ascertain; however the Employers acknowledge these costs to be at a minimum of 10%, waiving the necessity of any additional proof thereof. In addition, the delinquent contributions and any payments owed by an Employer pursuant to an installment agreement, shall bear interest up to the prime rate of interest plus two points charged by the Fund's custodian bank (or any other bank selected by the Trustees) or such other lawful amount as determined by the Trustees from the due date until totally satisfied. The Trustees are hereby given the power and authority to delegate the collection of contributions to a Collection Committee, which, in its discretion, may assess a lesser or greater amount or waive or suspend payment of liquidated damages, interest, audit fees or investigative costs in accordance with rules and procedures adopted by the Collection Committee and to compromise claims for delinquent contributions and related liabilities and collection costs where appropriate to settle cases favorably for the Fund. The Collection Committee may include trustees of the Laborers' Welfare Fund as members of the Committee.

In the event an Employer party to this Agreement or otherwise bound thereby becomes delinquent in his contributions or an installment agreement, or fails to post a bond as required, said delinquent Employer shall be liable for reasonable attorneys' fees and for all reasonable costs incurred in the collection process, including court fees, audit fees, investigative costs, etc. The term "reasonable attorneys' fees" as used herein shall mean all

attorneys' fees in the amounts for which the Trustees become legally obligated including recovery of liquidated damages, audit costs, filing fees and any other expenses incurred by the Trustees.

The Trustees are hereby given the power and authority, in their discretion, to require any Employer to deposit with the Trustees, in advance, as a guarantee for the payment of monthly contributions, an amount equal to three (3) times the monthly contributions of such Employer, as estimated by the Trustees. At the option of the Trustees the Employer shall furnish the Trustees, in lieu of any cash deposit, a bond in an amount not less than Five Thousand Dollars ($5,000.00) or in an amount consistent with the terms of the current collective bargaining agreements. In the event an Employer is repeatedly delinquent in its contribution payments to the Pension Fund, the Trustees have the power and authority to require that Employer to purchase a bond in excess of $5,000.00 or the amounts set forth in the current collective bargaining agreements, in an amount equal to three (3) times the highest monthly contributions of the Employer in the twelve months prior to any delinquency. The Trustees, in their discretion, may also waive the requirement of a cash deposit or a surety bond in lieu of a personal guaranty when such waiver is warranted.

Section 3. REPORT ON CONTRIBUTIONS AND PRODUCTION OF RECORDS. The Employers shall make all reports on contributions required by the Trustees. Each Employer shall promptly furnish to the Trustees. on demand. the names of its employees, their social security numbers, the hours worked by each employee, and such

other information as the Trustees may reasonably require in connection with the administration of the Trust and Pension Plan. The Trustees may at any time have an audit made by an independent certified public accountant or its representatives of the payroll of any Employer in connection with the said contributions and/or reports. All Employers shall be required to maintain records in compliance with procedures developed and communicated by the Administrator from the beginning of such Employer's participation in the Pension Fund forward unless given written authorization by the Administrator upon request to destroy said record. The Administrator shall require the Employer to designate the classification of all of his employees and if the Employer fails to do so, the Trustees shall conduct an investigation for the purpose of determining the classification of such employees and the results of said investigation shall be conclusive. Attached hereto as Addendum A are the current collection policies concerning Scheduling of Audits and Retention and Production of Employer Records adopted by the Trustees.

## ARTICLE VIII

## FILING CLAIMS AND REVIEW OF DENIALS OF CLAIM

Section 1.    FILING OF A CLAIM.    Claims for the payment of any benefits provided by the Pension Plan shall be filed, in writing, in accordance with the Rules and Regulations set forth in Article 7 of the Pension Plan.

## Section 2.  ADJUDICATION    OF    CLAIMS    AND    APPEALS .

The Trustees shall have the authority to adopt procedures for the review of claims and appeals of claims denied in whole or in part in accordance with ERISA and regulations adopted pursuant to ERISA.  The Trustees may delegate authority to decide claims to a Pension Committee comprised of Trustees and an Appeal Committee comprised of other Trustees.  The procedures may be changed from time to time at the discretion of the Board of Trustees.  The current procedures for claims and appeals are set forth in Article 7 of the Pension Plan.   The Trustees and/or the Pension  Committee and Appeals Committee have full discretionary authority to determine eligibility for benefits under the Plan and to interpret the Plan, all Plan documents, rules, procedures, and the terms of the Trust Agreement.  Their decisions and interpretations will be given the maximum deference permitted by law for the exercise of such full discretionary authority.  They will be binding upon all involved persons.

## ARTICLE IX

## DUTY TO COOPERATE

All of the Trustees and all directors, officers, employees or other representatives of any Employer Association or Union party to this Agreement shall be required to assist and cooperate with authorized representatives of the Pension Fund, its attorneys, auditors, or

other authorized representatives of the Pension Fund, its attorneys, auditors, or other authorized representatives in the prosecution of claims for or against the Pension Fund.

Specifically, an Employer shall provide to the Board of Trustees on request in the course of any audit deemed necessary or advisable by the Trustees the records set forth in the Policy for Retention and Production of Employer Records attached hereto as Addendum A. Furthermore, any Employer who is unable to produce adequate records to enable Trustees to perform the audit, shall be deemed to have authorized the Board of Trustees to contact the Internal Revenue Service and the Illinois Department of Revenue with permission to obtain all relevant information which may have been filed with said Agency by such Employer.

## ARTICLE X

## MISCELLANEOUS PROVISIONS

Section 1.    VESTED RIGHTS.   No Employee or any person claiming by or through such Employee, including his family, dependents, beneficiary and/or legal representative, shall have any right, title or interest in or to the Pension Fund or any property of the Pension Fund or any part thereof except as may be specifically determined by the Trustees and required by ERISA.

Section 2.    ENCUMBRANCE OF BENEFITS. No monies. property or equity, of any nature whatsoever, in the Fund, or policies or benefits or monies payable therefrom,

-30-

shall be subject in any manner by an Employee or person claiming through such employee to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance, garnishment, mortgage, lien or charge, and any attempt to cause the same to be subject thereto shall be null and void. The Fund shall not in any manner be liable for, or subject to the debts, contracts, liabilities, engagements or torts of any person entitled to benefits hereunder. Notwithstanding the foregoing, the benefits will be paid in accordance with any Qualified Domestic Relations Order as defined in Section 206(d)(3) of ERISA.

Section 3. PAYMENTS TO PERSONS UNDER DISABILITY. In case any benefit payments hereunder become payable to a person under legal disability, or to a person not adjudicated incompetent but, by reason of mental or physical disability, in the opinion of the Board, who is unable to administer properly such payments, then such payments may be paid out by the Board for the benefit of such person in such of the following ways as it thinks best, and the Board shall have no duty or obligation to see that the payments are used or applied for the purpose or purposes for which paid:

(d)     Directly to any such person;

(e)     To the legally appointed guardian or conservator of such person;

(f)     To any spouse, parent, brother or sister of such person for his welfare, support and maintenance;

(g)     By the Board using such payments directly for the support. maintenance and welfare of any such person.

Section 4.   SITUS.  The State of Illinois, shall be deemed the situs of the Trust Fund created hereunder.   All questions pertaining to validity, construction and administration shall be determined in accordance with the laws of the State of Illinois to the extent that such laws are not preempted by the laws of the United States of America. Jurisdiction and venue for all litigation under Federal statutes shall be in the Federal District Court for the Northern District of Illinois.

Section 5.   CONSTRUCTION OF TERMS.  Where the context admits in this Agreement, words in the masculine gender shall include the feminine and neuter genders, the plural shall include the singular and the singular shall include the plural.

Section 6.   NOTIFICATION OF TRUSTEES.  The address of each of the Trustees shall be that provided to the Administrator by the Trustee. . Any change of address shall be effected by written notice to the Administrator.

Section 7.   SEVERABILITY.  All provisions of this Agreement are intended to comply with the applicable provisions of ERISA, the Labor Management Relations Act of 1947, as amended, the Labor-Management Reporting and Disclosure Act of 1959, as amended, the Internal Revenue Code of 1986, as amended, and all other applicable laws, rules and regulations.  However, should any provision of this Agreement or of the Pension Plan or rules and regulations adopted thereunder or in any Collective Bargaining Agreement or Participation Agreement be deemed or held to be unlawful or invalid for any reason, such fact shall not adversely affect the provisions herein and therein contained unless such

illegality shall make impossible or impractical the functioning of the Trust and the Pension Plan, and in such case the appropriate parties shall immediately adopt a new provision to replace the illegal and/or invalid provision.

Section 8.    COUNTERPARTS.  This Agreement may be executed in two or more counterparts, any one of which will be an original without reference to the others.

ARTICLE XI

CHANGE OF TRUSTEE

Section 1.    RESIGNATION.  A Trustee may resign at any time by giving thirty (30) days advance written notice to the entity that appointed him and to the Board of Trustees.  Notice to the Board of Trustees shall be mailed to it, by certified mail, at the office of the Board.

Section 2.    REMOVAL OF TRUSTEE AND APPOINTMENT OF SUCCESSOR TRUSTEE.  A Union Trustee may be removed by the Union effective on receipt by the Board of Trustees of written notice of removal from the President/Secretary-Treasurer of the Union.  The Union shall appoint a successor Trustee which appointment shall be effective on receipt of written notice by the Board of Trustees of the appointment from the President/Secretary-Treasurer of the Union and of a written acceptance of his appointment from the individual appointed as successor Trustee. An Employer Trustee may be removed by the Association that appointed him effective on receipt by the Board of Trustees of

written notice of removal from the President of that Association. The removing Association shall appoint a successor Trustee which appointment shall be effective on receipt of written notice by the Board of Trustees of the appointment from the President of that Association and of a written acceptance of his appointment from the individual appointed as successor Trustee. The Jointly Appointed Arbitrator may be removed at any time by majority vote of the Board of Trustees and a successor Jointly Appointed Arbitrator may be appointed by it. The appointment of a successor Jointly Appointed Arbitrator shall be effective on receipt by the Board of Trustees of a written acceptance of his appointment from the person appointed as successor. No successor Trustee shall be personally liable for any act or failure to act of a predecessor Trustee.

Section 3. VACANCIES. If a vacancy in the Board of Trustees exists, the remaining Trustees shall have the same powers as the full Board until the vacancy is filled, subject to the quorum requirements set forth in Section 1 of Article V and the following:

(a) If there is a vacancy in the number of Union Trustees, then, with respect to any matter before the Board of Trustees, one Union Trustee (selected by the Union Trustees then acting) shall cast an additional vote for each existing vacancy in the number of Union Trustees.

(b) If there is a vacancy in the number of Employer Trustees, then, with respect to any matter before the Board of Trustees, one Employer Trustee (selected

-34-

by the Employer Trustees then acting) shall cast an additional vote for each existing vacancy in the number of Employer Trustees.

It is the intention of the parties to this Agreement that any matter or action coming before the Board of Trustees be acted upon by an equal number of Union Trustees and Employer Trustees.

## ARTICLE XII

## AMENDMENT AND TERMINATION

Section 1.    AMENDMENT. The Board of Trustees has full discretionary authority to amend this Agreement from time to time, except as follows:

(a)    In no event shall an amendment result in an alteration of the basic principles of this Agreement.

(b)    In no event shall an amendment result in a conflict with any Collective Bargaining Agreement as such agreement affects contributions to the Trustees or with any other agreements previously entered into by the Board of Trustees.

(c)    No amendment shall result in the repayment or reversion to any Employer of any portion of the Trust Estate.

Any amendment shall be in writing and shall be effective as of the date designated by the Board of Trustees. The Administrator shall distribute a copy of each amendment to each

Trustee and shall attach a copy thereof to the minutes of the meeting of the Board of Trustees at which it is adopted. The Board of Trustees shall notify all necessary parties and shall execute any instrument necessary in connection with the amendment.

Section 2.   TERMINATION.   This Agreement may be terminated by written instrument executed by:

(a)   All of the Trustees when there is no longer a Collective Bargaining Agreement or Participation Agreement or other obligation requiring contributions to the Pension Fund in effect between any Employer and the Union or the Trustees; or

(b)   By all of the Trustees. Immediately prior to the termination of this Agreement the Board of Trustees shall amend the Pension Plan to provide for the allocation of the Pension Fund in a manner consistent with the requirements of Title IV of ERISA. After segregating an amount sufficient to meet the administrative and other expenses relating to the Pension Fund, the Pension Plan and this Agreement, the Trustees shall allocate the remaining portion of the Pension Fund in accordance with the amended Pension Plan. All necessary provisions of this Agreement shall continue in effect until the assets of the Pension fund allocable to Employees and Beneficiaries under the Pension Plan. as amended. have been distributed or applied by the Trustees in accordance with the Pension Plan.

-36-

**Section 3.**    NOTIFICATION OF TERMINATION.  The Board of Trustees shall notify the Union, each Employer and all persons entitled to benefits under the Pension Plan of the termination of this Trust Agreement within the time required by law.

IN WITNESS WHEREOF, the Administrator, pursuant to the authority delegated to him by the Board of Trustees on May 13, 2002, has executed this Agreement on this 28 day of May, 2002.

James Jorgensen, Administrator
Date: 5/28/2002

IN WITNESS WHEREOF, the Trustees have executed this Agreement on the dates indicated.

Charles Cohen
Date: July 8 02

Joseph Coconato
Date: 7-8-02

Wayne E. Healy
Date: 7/8/02

James P. Connolly
Date: 7/8/02

Gary Lundsberg
Date: 7/8/02

J. Michael Lazzaretto
Date: 7/8/02

_Robert J. Madden_
Robert J. Madden
Date: 7-8-02

_Tod Masters_
Tod Masters
Date: 7/8/02

_Roger T. Vignocchi_
Roger T. Vignocchi
Date: 7-8-02

_Frank Riley_
Frank Riley
Date: 7-8-02

_Sam Vinci_
Sam Vinci
Date: July 8 2002

_Jeff Ziemann_
Jeff Ziemann
Date: 7-8-02

# ADDENDUM A

## RECORDS REQUIRED TO BE RETAINED BY EMPLOYERS
## AND PRODUCED FOR AUDITS

The following records shall be maintained and retained by all contributing employers to the Benefit Funds for at least six years from the contribution date and shall be produced for inspection and copying by an auditor of the Benefit Funds upon written request:

1.   Quarterly and annual payroll tax returns, including, but not limited to, federal quarterly form 941's, federal annual form W-2's, W-3's, 940's, 1099's and state quarterly unemployment returns (form UC-3).

2.   Payroll journals and/or registers which include or identify employees' social security numbers, hourly rates of pay, hours worked and the time period in which the work was performed.

3.   Individual earnings records for all employees of the employer not shown on payroll journals or registers, including social security number and work classification (or code or clock or ID number), hourly rates of pay, hours worked and the time period in which the work was performed.

4.   Cash disbursement journals and general ledgers.

5.   Copies of all contribution reports and proof of payment (canceled checks or records of canceled checks) of all contributions to the Laborers' Funds and to all other trade union fringe benefit funds to which the employer contributed.

6.   Copies of all dues records and proof of payment (canceled checks or records of canceled checks) of all union dues submitted to the Laborers' District Council.

7.   Records showing all amounts paid to all persons or entities that performed work for the employer as independent contractors or subcontractors, if any, including copies of any federal form 1099's issued by the employer.

8.   Daily time records filed by employees or supervisors.

9.   Source documents and lists of job codes and equipment codes.

10.   Certified payrolls for public sector jobs where such payrolls are required.

11.   Employee personnel files including, but not limited to, last known addresses and telephone numbers, any documents which demonstrate employees' job classifications and/or status as an apprentice, journeyman, foreman, superintendent, or supervisor. (Confidential medical records or other private records not relevant to the establishment of an employee's job classification shall not be disclosed.)

12. Bank account statements and canceled checks from any account used in conjunction with the employer's business.

13. If records of all hours worked, rates of pay and classifications are not provided in the records listed in items 1 through 10, the employer shall maintain monthly lists of all employees not shown on payroll records, showing Social Security number and work classification (or code or clock or ID number), rates of pay and hours worked.

Honor Roll Employers shall be required only to produce basic records needed by the Benefit Funds' auditors to do an audit, specifically items 1 through 7 above. However, if an initial examination of such limited records discloses significant record keeping errors or failures to contribute, the auditor may request additional records listed above. In the absence of evidence of a deliberate failure by an Honor Roll Employer to contribute on behalf of a bargaining unit employee, the rebuttable presumptions provided for in the attached Policy for Retention and Production of Employer Records shall not apply to such Honor Roll Employer.

Notwithstanding the foregoing, the Collection Committee or the Director of the Field Department may, in their discretion, determine that a full audit shall be done of any employer or that, where a sampling audit is to be conducted, specific records shall be produced. The judgment of the trustees in interpreting and applying this policy shall be conclusive and binding on all parties.

Adopted January 9, 2002

# LABORERS' PENSION AND WELFARE FUNDS

## POLICY FOR RETENTION AND PRODUCTION OF EMPLOYER RECORDS

As Adopted by the Boards of Trustees
Effective as of April 1, 2006

WHEREAS, Section 209 of the Employee Retirement Income Security Act of 1974 , as amended ("ERISA"), 29 U.S.C. Section1059, requires employers obligated to contribute to employee benefit funds to maintain records with respect to its employees which are sufficient to determine benefits due to such employees of which may become due to them; and

WHEREAS, the Trustees of the Laborers' Pension Fund and the Trustees of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity (collectively, the "Benefit Funds") have the authority under their respective Trust Agreements to establish rules, regulations and policies regarding records which must be maintained by employers in order to administer the Benefit Funds; and

WHEREAS, the Trustees of the Benefit Funds have found that most contributing employers maintain proper records and make all required contributions to the Benefit Funds, nevertheless, there are employers who are bound by the Trust Agreements of the Benefit Funds who fail to maintain records which are adequate for the Funds to determine whether proper contributions have been made on behalf of eligible employees and that some of such employers do so deliberately in order to avoid their obligations to make such payments; and

WHEREAS, the practices of employers who fail to maintain records sufficient to enable the Benefit Funds to conduct thorough payroll audits cause their employees to lose valuable pension and welfare benefits and cause the Benefit Funds to lose contractually required contributions and investment earnings on those contributions; and

WHEREAS, the practices of employers who fail to maintain adequate records cause the Benefit Funds to incur substantial additional administrative and legal expenses in order to determine proper amounts owed to the Funds by such employers; and

WHEREAS, enforcement of a policy specifying the records required to be maintained and produced increases the ability of the Funds to prove the contributions owed by delinquent employers and thereby to provide proper credit to the employees and their beneficiaries;

NOW THEREFORE, the Trustees resolve that the following policies are adopted by the Benefit Funds effective as of March 1, 2002:

1. Except as otherwise provided herein, all contributing employers to the Benefit Funds shall maintain and make available for inspection and copying by an auditor of the Benefit Funds the records listed on Appendix A, attached hereto.

2. Any employer obligated to contribute to the Benefit Funds who fails to maintain and make available for inspection and copying to an auditor of the Benefit Funds the requisite records listed on Appendix A shall bear the burden of proof with respect to the exclusion of any employee from coverage by the collective bargaining agreement with the Union. In those cases where an employer asserts that an employee is excluded because he/she is a member of another bargaining unit, the employer must submit tangible evidence of that fact, e.g., a union membership card, contribution records maintained for the benefit funds of the other bargaining unit, commercial drivers' license if it is asserted that an employee is a truck driver rather than a laborer and workers' compensation policies, forms and applications listing an employee's job classification or other business records. The affidavit of an employer's representative or officer unsupported by documentary evidence shall not be sufficient to meet the employer's burden of proof. Affidavits solicited and obtained ex parte by an employer's representative from employees, for which there is no corroborative evidence in the form of records maintained in the ordinary course of business, shall not be sufficient to meet the employer's burden of proof.

3. When an employer has failed to maintain or make available the requisite records, there shall be a rebuttable presumption that any employee listed as a possible laborer by an auditor, Field Representative or attorney representing the Benefit Funds was a laborer. There shall also be rebuttable presumptions concerning the hourly rate and number of hours worked as follows: (a) that the employee was paid only $10.00 per hour if no record of wage rates was made by the employer, and/or (b) that the employee worked 72 hours per week if no record of the number of hours was maintained; whichever of these presumptions results in the higher amount of contributions shall be applied. When evidence exists that a different hourly rate was paid to employees of an employer that failed to maintain the required records, at the discretion of the Director of the Field Department, a different hourly rate may be presumed for purposes of determining the amount of contributions owed by the employer. If that evidence shows that the employer paid a rate lower than $10.00 per hour to any employees doing bargaining unit work, then that lower rate shall be presumed to be the actual rate paid to all employees for whom adequate records were not kept. Similarly, where evidence exists of a different number of hours worked, the Director may apply a different number of hours for determining the contributions owed, and this number of hours worked shall be presumed correct. All wages computed as provided in this paragraph shall be presumed to be paid as straight time wages regardless of the number of hours worked unless the employer has provided documentation, in the form required by the terms of this policy, showing that it followed the requirements of the Fair Labor Standards Act and/or the applicable collective bargaining agreement as to the payment of overtime.

4. An employer that fails to maintain the requisite records and fails to cooperate with the Trustees in establishing the paid wage rates, actual hours of work and contributions owed to the Benefit Funds shall be liable to the Benefit Funds and any related organizations, for the contribution amounts determined as provided herein and also for 20% liquidated damages, compound interest at the rate of prime plus 2 points (as determined by the Administrator), auditor's and attorney's fees and any other expenses of collection including investigative costs.

# LABORERS' PENSION AND WELFARE FUNDS

## POLICY FOR SCHEDULING OF AUDITS

As Adopted by The Boards of Trustees
Effective as of April 1, 2006

Contributing employers to the Laborers' Pension Fund and the Health and Welfare Department of Construction and General Laborers' District Council of Chicago and Vicinity (collectively, the "Benefit Funds"), shall be audited periodically in accordance with the procedures adopted by the Collection Committee of the Benefit Funds. The Director of the Field Department, in cooperation with the Benefit Funds' auditors, shall prepare a schedule for auditing contributing employers in accordance with the following procedures.

Two types of audits shall be conducted: "full audits" in which payroll and other records on all employees are examined and "sampling audits" in which a selection of payroll and other records are tested to enable the compliance auditor to make a reasonable determination that there are no delinquencies. A sampling audit should include a review of all types of records (e.g. payroll records, tax records, cash disbursement records, reports to other benefit funds, etc.) Where a sampling audit discloses delinquencies or related record discrepancies, a full audit shall be conducted.

Employers shall be scheduled for either full audits or sampling audits in groups based upon the contribution histories of the employers. Either a sampling or full audit shall be conducted at least once every five (5) years. Any employer that fails to schedule an audit and submit records for review within 45 days from the date of the audit request will be liable for all costs of compelling and enforcing the audit request. The following procedures shall be used:

## AUDIT PERIOD

1. **New Employers**. New employers shall be scheduled for audits within the first year in which contributions to the Benefit Funds are required.

2. **Honor Roll Employers.** Employers with a history of adequate record keeping and timely, payments to the Benefit Funds ("Honor Roll Employers"), shall be required to submit to audits every three (3) to five (5) years. Following an audit showing adequate record keeping and correct payments, such an employer shall be designated an Honor Roll Employer and shall be selected randomly for an audit between the third and fifth year thereafter. (Such employers may opt for a scheduled audit every three years.) An inadvertent shortage of no more than the greater of $1000 or two percent (2%) of required contributions determined on a full audit covering three or more years of contributions to the Benefit Funds shall not disqualify an employer from inclusion in this group.

3. **Other Contributing Employers**. Employers that are not classified as New or Honor Roll Employers or who have been assessed significant delinquencies to the Benefit Funds or any of the ancillary funds to which contributions are owed pursuant to the collective bargaining agreements of the Laborers' District Council shall be scheduled for full audits at least once every three (3) years.

4. **Employers Subject to Special Audits**. At the discretion of the Director of the Field Department full audits of employers obligated to contribute to the Benefit Funds may be conducted at any time based upon information concerning possible delinquencies, e.g., failure to file monthly remittance reports, failure to pay contractually required wage rates, information concerning a possible closing or sale of the business, information that the employer is operating an alter ego or similar bases suggesting possible delinquencies.

## FULL AND SAMPLING AUDITS

1. **New Employers**. If there is a sufficient number of employees of a New Employer, the auditor of the Benefit Funds may do a sampling audit to determine if the employer is maintaining accurate records and making required contributions, otherwise the auditor will do a full audit. An important purpose of audits for new employers is to inform employers of the procedures for contributing to the Benefit Funds and the requisite records to be maintained. *

2. **Honor Roll Employers**. Sampling audits shall be used for Honor Roll Employers if they have sufficient employees to warrant use of sampling methods. If a sampling audit discloses inaccurate or incomplete record keeping or evidence of significant delinquencies, a full audit shall be done.

3. **Other Contributing Employers**. Full audits shall be conducted if employers are not qualified as New or Honor Roll Employers.

4. Notwithstanding the foregoing, the Collection Committee or the Director of the Field Department may, in their discretion, determine that a full audit shall be done of any employer or that, where a sampling audit is to be conducted, specific records shall be produced.*

* For information concerning the requisite records to be maintained, see the Laborers' Pension and Welfare Funds Policy for Retention and Production of Employer Records, effective as of April 1, 2006 and the Records Required to be Retained By Employers and Produced for Audits adopted January 9, 2002.